I'm Florence Brummer. I've been appointed on behalf of Mr. Smith to represent him. Mr. Rosenquist and I were appointed to Mr. Smith after the case was sent back to the district court when Mr. Smith went to the state court level to exhaust his issues. After the district court issued its ruling and Mr. Smith filed his request for Certificate of Appealability, the district court issued the Certificate of Appealability. As the court knows, the issues that the Certificate of Appealability was issued on was regarding Detective Whitson, whether her testimony was unreliable, and since the Supreme, the Superior Court in Arizona failed to grant a new trial, whether that was a violation of due process. And, of course, associated with that issue was whether it was fairly presented as a Federal issue and whether it was also a fundamental miscarriage of justice. Also, Mr. Smith is requesting that this Court certify the issue regarding ineffective assistant of counsel and for the Court to rule on it on the merits, and that was presented within the opening brief as an uncertified issue. In this case, the evidence was fairly the issue was fairly presented to the state court when the case was sent back to the state court. The case of Holden was cited, which cited the Alford case, which had Supreme Court precedents in it, and put the state court on notice and put the state appellate court on notice that this was a Federal issue. We cannot tell from the state court rulings if the state court considered it at all. Basically, the trial court just in about two sentences said, I don't find that there was overwhelming evidence, so I don't find any problem with Detective Whitson. And then the court of appeals did a four-line ruling that said, we're not taking review, and then it was sent back to the district court. The other issue, so we get past that. I'm sorry. This is the Whitson issue? The Whitson issue, right? Yes, the Whitson issue. Well, let me ask you, what is it about Detective Whitson's testimony that was so key that the state claims that everything she said was corroborated by somebody else? And they cite specifically to the testimony of this other detective, which is at supplemental excerpts of record 543 and 544. Just to cut to the chase, I understand the key thing that you claim she added is his admission that he intentionally did the touching. Yes. Did I get that right? And the state says, well, even if we strike her testimony, you had the independent testimony of this other detective. There was an officer. I forgot his name, but his testimony here, they cited 543 and 544 as excerpts of record. And the medical testimony. There was medical testimony, although, if I understand your argument, is that the doctor couldn't tell whether it was accidental or intentional, and his claim was that he tossed her up in the air, and that's all. And, I mean, it seems a little contrived, but at least that's his story, that it was an accident. Exactly. And if I understand correctly, your claim is that what she brings to the table, which was key, was his supposed admission of intentionality. Right. Absolutely, Your Honor. Because the one count that he was found guilty on involved intentionally inserting the finger into the vulva, inserting any body part into the vulva, in this situation, the finger. And in this case, Detective Whitson had testified, first she had said that his response was, whether he said what was the nature of the contact, and he said whether he knew that his hands would have contact with her. And she said, his response to me was, not that I know of, it was not incidental. And then when the district court did its ruling in the report and review, the district court says, well, the word incidental appears to be a transcription error, and the court took it to mean that the statement should have been, it was not intentional. But what was read to the jury was, it was not incidental, which is a different meaning. And then further on, Detective Whitson testifies that says that Smith said, I did pick her up, like I said, and I did put my hand up her shorts, but it wasn't an accident, it was intentional. And then it was Agent Staltz who was one of the officers in the room, and he says that the victim, or that Smith said that it was intentional. The problem with Agent Staltz is that because that testimony was presented at trial, at a time when everything regarding Detective Whitson was not known, in fact, what was found out about Detective Whitson was that she contrived confessions. And so there was no question. But here, there's evidence beyond that that kind of creates a problem for your client, unless you tell me that it doesn't. For instance, he talks about how he moved his finger in her private parts. Instead of in and out, it was, but isn't that a part of the record? He justifies that it was an accidental movement, and there has to be intention. It can't be something that happens accidentally. And what did the doctor say about that? The doctor said that it was the kind of thing that couldn't happen accidentally. Now, isn't that a part of the record? I'm not suggesting we've got to decide the case, but we look to see what went to the trial facts, and that went to the trial facts, didn't it? Yes, the medical testimony went to the trial facts, yes. And also you have the testimony of Michael Stahls, right? Yes. Which I was referring to on page 543 and 544, where in 543 he talks about how he was erect and aroused by children. He's always aroused when he plays with children. And then on page 544, and this is lines 3 to 6, question, and did he indicate whether it was accidental or intentional answer? He indicated it was intentional, done on purpose. And the one thing that we weren't able to do. So if you take the doctor's evidence, which Judge Ferris is referring to, and you take the testimony of this other officer, you can knock out with this testimony altogether. You could say, first of all, it would be harder for her to fabricate if the conversation she had with the defendant was in the presence of the doctor. If she was in the presence of another officer, she'd have to get another officer to fabricate with her. And there's no claim of that here. There were two officers fabricating. And then you've got the independent statement of another officer that reports that he confessed to intentionality and also to, you know, very damaging fact that he is aroused when playing with children. He's actually aroused, right? But the one thing that wasn't able to be done with Agent Stoltz, because the information regarding Detective Woodson wasn't known, was that whether Agent Stoltz, whether it was an independent recollection or whether he talked with Detective Woodson, and not saying that Agent Stoltz did anything wrong, but if he talks to Detective Woodson before the trial and she says, well, remember this guy, you know, definitely said this was intentional, and well, if you're saying that, sure, you know, I'm remembering that as well. And because there was no, at the district court level, there was no evidentiary hearing on it, that wasn't able to be explored by Smith. And because the one factor we strike it now, let's assume the court says, all right, Woodson wanted to go all out for this guy. We're not going to consider anything that could have been based on her testimony. Why does a man strip his own child naked to apply whatever he does in front of another child? If he's going to do it, if his skin is so, whatever it was, the little girl's going home any minute, he can put it on his son then, or he can put it on his son after he gives him a bath. I'm not saying, Your Honor, that it's not inappropriate. All I'm suggesting is, wasn't there enough to go to the jury without anything being said from Detective Woodson, who this record shows really intended for any man, who did anything to a child, to pay as heavy a price as he could? So let's assume we rule that out. No, there wasn't. If you take Detective Woodson and you take Detective Schultz away, the one issue that the jury found him guilty on was the intentional insertion, and there's not enough to go to the jury on. May I reserve the last 30 seconds? Yeah, actually, I'll give you time. We'll hear from the State. May it please the Court, my name is Karla Hodes DeLore, I'm an Assistant Attorney General from the State of Arizona representing the Respondents. Before I talk about the fundamental miscarriage of justice, I just would first like to make a couple comments, saying that the District Court correctly ruled that Petitioner did not fairly present this claim as a Federal claim in the State courts, therefore it's been procedurally defaulted. The Petitioner's citation of State v. Holden in his petition for review in the Arizona Court of Appeals was clearly insufficient to raise a Federal constitutional issue. He did not cite any Federal law or the Constitution, and he gave no indication in his citation of the State cases that these cases were interpreting Federal issues. Did he do this pro se? No, not in the State courts. He had counsel at that time. He was without counsel for a number of years, him and his own. So you're sure that that was done? I can double check, but I believe he was... I can double check, but I believe he, I thought he was represented by counsel. We'll check it. Yes, he was represented by counsel at the trial court level when he filed his petition for post-conviction relief. Different trial counsel than tried to counsel. Yes, and then he was represented by that same counsel on his petition for review. And as Petitioner's counsel stated, when the trial court initially ruled on his petition for post-conviction relief, she stated that the trial court made no reference to whether or not this was a Federal issue, and the reason that was is because he never presented it as a Federal issue in the trial court in his petition for post-conviction relief, and he never even cited the case of State v. Holden. The first time he cited State v. Holden was in his petition for review to the Arizona Court of Appeals. And Petitioner is not able to establish that a fundamental miscarriage of justice occurred to excuse the default. As this Court's mentioned, even if you take out all of Detective Whitson's testimony, well, first, Petitioner has not shown any evidence that Detective Whitson engaged in any misconduct in this case. When she... He didn't make. I'm sorry? She may have. He quoted a statement that he says he didn't make. She attributed it to him, and with her background, we don't know who's telling the truth. He has not set forth any affidavits. There's no indication that in 1993, when she interviewed the witnesses or when she testified at trial in 1995, that she presented false testimony. But irrespective of anything she testified to, you do still have evidence that she did not make. The testimony of the other investigator, the Office of Special Investigations Michael Staltz, he was, because Petitioner was in the military at the time this happened, he was conducting his own investigation on behalf of the military. And so when he interviewed the Petitioner with Detective Whitson, he took his own notes, because he was conducting his own investigation. We don't have any transcript of that at all. No, that was not admitted. Her notes, Whitson's notes. We don't have those. We just have the testimony of both Detective Whitson and Detective Staltz. I'm guessing if for some reason they were to start challenging Detective Whitson's credibility, then they could have produced Detective Staltz's testimony. They didn't know about it at that time. Right. They did not know about it, and there was no evidence that the two of them were any type of collusion at the time. You know, he was doing his own investigation on behalf of the military. He wasn't asking them. I think he asked one question, didn't he? He asked – well, yes. The main question he asked was about if he was aroused while playing with the children. That was the only question he asked? That was the only question I believe he asked. But then he also testified that he did indicate that he said the insertion was intentional. But that was a long time afterwards and after he and Whitson had talked. Well, there was – but there's no evidence of any collusion. He said that he was doing his own investigation on his own notes, and that's what happened. But you also have the doctor's testimony, and the doctor, based on her examination two days after – and this was before Detective Whitson even became involved in the case – the doctor testified that there were two problems with the girl's vagina. It was abnormally red and there was a tear to the hymen. And the doctor concluded on Supplemental Excerpts of Record, page 50, the doctor This injury was inflicted as opposed to it happening accidentally. You also have the victim's statements of what the petitioner had done, that he inserted his finger in her. And you also have the statements to the victim's mother and the social worker that also corroborate both Detective Whitson and Detective Stoltz's testimony. So – This was a very close decision for the jury, apparently. Three of the counts were stricken against the defendant's son. Correct. And two of the counts they found him not guilty on. Correct. And only one count they found him guilty on. Correct. But there – but Petitioner still, even given that, Petitioner has still not established a fundamental miscarriage of justice in this case that if you were to take away Detective Stoltz's testimony, the reasonable juror would not have found him guilty beyond a reasonable doubt because of the other remaining evidence against him. And like I said, most importantly, Petitioner has not – There's a tiny bit more than that, that counsel is arguing. Maybe not tiny. Maybe it is more than tiny. Had they known about Agent Whitson's propensity to fabricate, they would have not only argued against Stoltz about any coaching she might have engaged in and then made perhaps weak in test testimony if it turns out that they – she coached him. And, you know, the doctor's testimony – I mean, the doctor can say, you know, this doesn't look to me – but it's an opinion. And I think juries know the difference between a fact and an opinion. I mean, the doctor wasn't there. He can – or she can say whatever, you know, this doesn't look to me like it could have been intentional. But I think jurors could well be skeptical of that. So that's the full claim. It's an uncomfortable position for the State to be in, to have a witness, a State witness who's been found to be deliberately fabricating evidence against people accused of crime. I mean, it must be horrible for the position to put – for the State to be in because, you know, you – if you – you, I mean, if the office has convicted people based on their testimony, there must be some feeling of insecurity about whether or not the convictions are any good. Well, it's – no, it's definitely a difficult situation for everyone involved. You don't want that to happen in any case. But you also have to remember that the – when Detective Whitson first interviewed the victim and again when she interviewed the petitioner, there was also another officer present, Detective Langdon. And actually, Detective Langdon, she took her own notes and then Detective Whitson took those notes and incorporated them into her report. Detective Langdon then reviewed those notes to make sure that they were accurate. So if there was – Is there anything in those notes where he admitted inserting the finger? Yes. That's – that's – yes. Get a citation on that because I didn't find that. Well, it just – it just – the testimony is from – it was from Detective Whitson's testimony in its supplemental record – excerpts of record page 3. This is kind of the problem, isn't it? That everything we get at the trial apparently came from Whitson. Correct. And you were undoubtedly in the courtroom when I suggested that ineffective counsel was 600 days in jail and meeting once. That's this case. I made a mistake with these two ineffective counsel questions. But this – in this case, do I understand the record is clear that after 600 days in jail, the defendant went to trial with a lawyer who met him one day before the trial and only for the purpose of trying to talk him into pleading guilty. Isn't that the unequivocal record? That is correct. But the – but the – the fact remains that if this – if this had been discovered about Detective Whitson, and like you said, there's still no evidence that she had falsified any testimony or conducted any misconduct at the time of this case, but if they had started bringing this up, I'm sure the State would have called Detective Langdon and subpoenaed her notes. And also, Judge Kaczynski, back to your – went back to your comment earlier that the jury also heard the other testimony about what had happened, about the fact that the Petitioner is rubbing lotion on his son, taking all his clothes off him. No question about that. And clearly, that's a violation of count two, isn't it, not count one? Right. But I'm saying that the jury is hearing – Did the defense lawyer argue that at all, that maybe he was guilty of counts two and three instead of count one? The – I – I – I can't remember exactly what the defense attorney argued with respect to those counts because I've been focusing on the count issue here, but what I – what I'm – the point I guess I'm trying to make is that the jury heard about all this other conduct that had been going on between Petitioner and these children that I think would lead them to believe that he was not maybe engaging in the most appropriate conduct with these children. No question about it. That's why I ask about counts two and three, because counts two and three involve substantially less than the penalty that he received under count one. But I – I still believe that he has not established the fundamental – fundamental miscarriage of justice to excuse the procedural fault. It certainly is a steep hill from the time. Thank you. Thank you. I will give Petitioner a minute for rebuttal. Your Honor, I wish I had a rebuttal. A rebuttal. Okay. Thank you, counsel. Both counsel did a very fine job arguing the case. Thank you. Case is submitted. Next case on the calendar is Russell v. Reno.
judges: Kozinski, Farris, Panner